UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRUCE FERRIS,

        Plaintiff,

v.                                           Case No. 17-C-1289

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER REVERSING COMMISSIONER'S DECISION

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Bruce Ferris' application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Ferris challenges the decision by the Administrative Law Judge (ALJ) denying him benefits because the ALJ failed to follow Social Security Administration (SSA) rulings and regulations. For the reasons stated in this opinion, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

On October 12, 2012, Ferris, age 59 at the time, completed an application for disability and disability insurance benefits, alleging disability beginning December 3, 2011. He listed a crushed elbow, neck problems, crushed L1 and L4 vertebrae, bulging discs, whiplash, fractured heel, right shoulder rotator cuff surgery, bone spurs, a fractured hip, and arthritis in his fingers, shoulder, hip, and left foot as conditions that limited his ability to work. R. 104. After the application was denied initially and upon reconsideration, Ferris requested a hearing before an ALJ. ALJ Joseph G. Hajjar

conducted a hearing on May 27, 2016. Ferris, who was represented by counsel, and a vocational expert (VE) testified. R. 51–103.

At the time of the hearing, Ferris lived in his home with his wife and dog. R. 57. He testified that he completed the tenth grade and did not obtain a GED. R. 59. He worked as a self-employed excavator and estimator. R. 64. As a foundation consultant estimator, Ferris would prepare an estimate that explained how much it would cost to fix a customer's foundation. R. 66. He testified that 10 to 20 percent of his job involved excavating property with a backhoe when the company's backhoe operator was behind in his work. R. 67. When he was estimating and doing consulting work, he spent fifteen minutes of every hour on his feet and the next forty-five minutes sitting at a table. R. 70. Ferris testified that he had to occasionally enter crawl spaces. He indicated that going into crawl spaces was hard on his neck because he was 6'5" and had to bend down to walk under beams. R. 71. He last worked as a tanker truck driver but stopped working on December 3, 2011 when he fell on ice and fractured his hip. R. 60.

Ferris testified that his physical impairments included a hip fracture, heel fracture, low back pain, right shoulder limitations from a rotator cuff repair, and depression. He reported that he would have difficulty doing his job as an estimator because it required that he walk down steps into the basement. Ferris also testified that he would not feel comfortable driving a backhoe because his arthritis would prevent him from using the finger controls. R. 84.

As to his activities of daily living, Ferris testified that he teaches his dog tricks for 30 minutes each day and does dishes in stages with breaks. R. 80. He stated that he walks his dog one block every other day and has difficulties using stairs since he fractured his hip. R. 58, 71. Ferris reported that he could be on his feet for one hour then would have to sit in his recliner and put his feet up to

2

reduce the swelling in his feet. R. 78. He could only sit in the recliner for about 30 to 45 minutes to prevent a spasm that shot down his leg. R. 79.

A VE also testified at the hearing. She testified that Ferris worked as a tanker truck driver, that while generally performed at the medium exertional level, Ferris performed at a light exertional level, and SVP 3. He also worked as a dump truck driver, that while generally performed at the medium exertional level, Ferris performed at a light level with an SVP of 2. R. 74. He then worked as an estimator, generally performed at SVP 7 and sedentary, that he primarily performed at sedentary and at SVP 6 and a light exertional level. Although she did not state the job was a composite job, she explained that 10 to 20% of the time Ferris operated a backhoe. R. 75.

The ALJ then asked the VE a series of questions related to a hypothetical individual's ability to perform certain jobs. He asked whether a hypothetical individual of Ferris' age and education who can occasionally use foot controls with the left foot, climb ramps and stairs, balance, stoop, kneel, and crouch but can never use ladders, ropes or scaffolds or crawl; can have no more than occasional exposure to unprotected heights; can occasionally operate commercial vehicles; and can occasionally tolerate vibrations could perform any of Ferris' past jobs at the light exertional level. The VE testified that the hypothetical individual could perform all aspects of the composite job. R. 87.

The ALJ then asked whether a hypothetical individual with the previous limitations but who can only sit for up to six hours in an eight-hour day and would need to alternate to a standing position for five minutes after every 30 minutes of sitting without being off task and can stand and walk for up to six hours in an eight-hour workday but would need to alternate to a sitting position for five minutes after every 30 minutes of standing or walking without being off task could perform

3

any of Ferris' past work. The VE answered that while the hypothetical individual could perform the work as an estimator as it is generally performed, he would not be able to perform the composite job as Ferris performed it. R. 88–89.

After the ALJ questioned the VE, Ferris testified that he was required to crawl for his job, even though he did not list that activity in his initial job description. R. 91. Ferris testified that, while crawl spaces are not common, he was required to crawl into them. R. 92. The VE then testified that, if Ferris' testimony about crawling was accepted and crawling was a requirement of his job, he would not be able to perform his job as he performed it. R. 96.

In a decision dated July 19, 2016, the ALJ found Ferris was not disabled. R. 21–34. The ALJ concluded Ferris met the insured status requirements on December 31, 2013 and had not engaged in substantial gainful activity from his alleged onset date of December 3, 2011 through his date last insured. R. 23. The ALJ found Ferris had the following severe impairments: left acetabular fracture and bilateral mild osteoarthritis of the hip, left greater than right. *Id.* At step three, the ALJ determined Ferris' impairments did not meet or medically equal any listed impairments under 20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ ultimately determined Ferris had the residual functional capacity (RFC) "to perform light work as defined in 20 C.F.R. § 404.1567(b) except he can lift, carry, push and pull 20 pounds occasionally, and 10 pounds frequently. He can sit for up to 6 hours in an 8-hour workday but will need to alternate to a standing position for 5 minutes after every 30 minutes of sitting without being off task. He can stand/walk for up to 2 hours in an 8-hour workday but will need to alternate to a sitting position for 5 minutes after every 30 minutes of standing/walking without being off task. He is limited to using foot controls with his left lower extremity occasionally. He can never climb

ladders, ropes, or scaffolds, or crawl. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He is limited to occasionally being around unprotected heights, operating commercial vehicles, and vibration." R. 25. With these limitations, the ALJ found that Ferris was capable of performing past relevant work as an estimator. He noted that Ferris' RFC did not preclude him from performing the activities related to this work. R. 31. Based on these findings, the ALJ concluded Ferris was not under a disability, as defined in the Social Security Act, at any time from December 3, 2011 through December 31, 2013. R. 33. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Ferris' request for review. Thereafter, Ferris commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence,

5

resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Ferris raises several challenges to the ALJ's decision but only one need be addressed since it is enough by itself to require a remand. Ferris asserts that the ALJ erred in failing to analyze whether he could perform his composite job as he actually performed it. A composite job is a job that has "significant elements of two or more occupations." SSR 82-61, 1982 WL 31387. Because composite jobs have no counterpart in the Dictionary of Occupational Titles, "[s]uch situations will be evaluated according to the particular facts of each individual case." *Id.*

Ferris contends that even though he primarily performed the work of an estimator, 10 to 20% of his job included excavation and required that he use a backhoe when the individual who ordinarily operated the machine got behind in his work. He also testified that his job required that he crawl into crawl spaces. The VE classified Ferris' work as an estimator and a heavy equipment operator. She testified that Ferris would not be able to perform the composite job as he performed it if he was required to use a backhoe. She also opined that, if Ferris' testimony about crawling was accepted and crawling was a requirement of his job, he would not be able to perform his job as he performed it. R. 96.

In his decision, the ALJ determined that Ferris presented insufficient evidence to establish that his work required the use of a backhoe or crawling and accordingly concluded that Ferris was able to do his previous work as he performed it. R. 33. The ALJ noted that Ferris reported in a

work history report that he was a foundational analyst, which required that he give estimates on repairing the foundations of residential homes and commercial buildings. In the report, while he did not indicate whether he used machines, tools, or equipment, he explicitly noted that he did not crawl. R. 273. Ferris asserted for the first time at the administrative hearing that in addition to preparing estimates, he would assist in working the backhoe and would need to crawl into small crawl spaces. R. 32 (citing hearing testimony). The ALJ did not believe Ferris' testimony at the administrative hearing regarding his job responsibilities and accordingly found that Ferris' work as an estimator did not require the performance of work-related activities precluded by the RFC. Ferris maintains that, because operating a backhoe and crawling were part of his job as he actually performed it, the ALJ erred in finding that he was not disabled.

Even if the ALJ was correct in concluding that the evidence did not support Ferris' assertion that crawling was a part of his job, the ALJ improperly found that Ferris' use of a backhoe was not a requirement of his job as he actually performed it. The claimant "is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." *See* SSR 82-62, 1982 WL 31386, at *3; *see also Mills v. Sullivan*, 804 F. Supp. 1048, 1056 n.20 (N.D. Ill. 1992) ("[B]lind matching of job titles is insufficient . . . if plaintiff's actual job entailed the duties of additional DOT job listings, those additional listings must also be considered in evaluating the exertional demands of such a 'composite' job." (citing *Paige v. Bowen*, 695 F. Supp. 975, 980–81 (N.D. Ill. 1988))). Ferris, whose testimony controls, stated that using a backhoe was a part of his job duties. The ALJ did not find that Ferris did not perform this work or that his testimony reporting that 10 to 20% of his day consisted of operating a backhoe was not credible.

7

Instead, he concluded Ferris' "use of the backhoe was based more on the company's knowledge of his ability to perform the skill, rather than a requirement of his position." R. 33. But nothing in the record supports this conclusion. Because the ALJ improperly concluded that using a backhoe was not a requirement of Ferris' job, he erred in assessing whether Ferris had the RFC to perform the work as Ferris had actually performed it. After all, an ALJ "may not deem a claimant capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding . . . [him] capable of performing the less demanding of the two jobs." *Peterson v. Astrue*, No. 1:09-cv-00209, 2010 WL 3219293, at *7 (N.D. Ind. Aug. 12, 2010) (quoting *Gallant v. Astrue*, No. 09-357-P-S, 2010 WL 2927263, at *5–6 (D. Me. June 20, 2010)). This error accordingly necessitates remand.

## CONCLUSION

For the reasons above, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this   25th   day of September, 2018.

                                        s/ William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court